UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Corning Incorporated,   Civil No. 20-700 (DWF/TNL)

        Plaintiff,

v.

Wilson Wolf Manufacturing Corp.
and John R. Wilson,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

---

Ivan Poullaos, Esq., and Kimball R. Anderson, Esq., Winston & Strawn LLP; Jeff M. Barron, Esq., Barnes & Thornburg, LLP; Lora Mitchell Friedemann, Esq., and Nirmani Chethana Perera, Esq., Fredrickson & Byron, PA, counsel for Plaintiff.

Britta S. Loftus, Esq., Devan V. Padmanabhan, Esq., Michelle E. Dawson, Esq., Sri K. Sankaran, Esq., and Paul J. Robbennolt, Esq., Padmanabhan & Dawson, PLLC, counsel for Defendants.

---

**INTRODUCTION**

This matter is before the Court on Plaintiff Corning Incorporated's ("Corning" or "Plaintiff") Motion to Dismiss Count Ten of the Amended Complaint Without Prejudice (Doc. No. 160) and Defendant Wilson Wolf Manufacturing Corp. and John R. Wilson's (together, "Defendants" of "Wilson Wolf") Motion to Dismiss (Doc. No. 179). For the reasons set forth below, the Court grants Corning's motion and denies Defendants' motion.

## BACKGROUND

**I.      General and Procedural History**

Wilson is the CEO of Wilson Wolf, a biotechnology firm that develops and manufactures cell culture devices. Corning manufactures and sells cell culturing vessels, including the HYPERStack product. The parties have been litigating over cell culture technology for several years. Much of the factual background to the parties' dispute is set forth in the Court's March 22, 2016 Memorandum Opinion and Order in the case captioned *Wilson et al. v. Corning Inc.*, Case No. 13-cv-210 (D. Minn. filed Jan. 25, 2013) (the "2013 Lawsuit") (*see* 2013 Lawsuit, Doc. No. 388), as well as the Court's prior order in the present action (the "DJ Action" or the "Present Action") granting in part and denying in part a motion to dismiss the original complaint. (Doc. No. 43.)

In the 2013 Lawsuit, Wilson and Wilson Wolf sued Corning in Minnesota, asserting claims for patent infringement (alleging that Corning infringed two of their patents (the "Wilson Wolf Patents"))[1], breach of contract, misappropriation of trade secrets, and inventorship claims with respect to three Corning patents—U.S. Patent No. 7,745,209 (the "'209 Patent"), U.S. Patent No. 8,178,345 (the "'345 Patent"), and U.S. Patent No. 8,273,572 (the "'572 Patent"). In that case, Wilson and Wilson Wolf alleged that Corning obtained Wilson Wolf's cell culture technology under a confidentiality agreement and that Corning subsequently developed products using that

---

[1]      The patents asserted in the 2013 Lawsuit are U.S. Patent No. 8,158,426 (the "'426 Patent") and U.S. Patent No. 8,158,427 (the "'427 Patent"). Specifically, Wilson and Wilson Wolf alleged that the manufacture and sale of Corning's HYPERStack product infringed the Wilson Wolf Patents.

technology.  On March 17, 2015, the Court dismissed the claims for patent infringement of the '426 and '427 Patents with prejudice, after the Supreme Court disallowed divided infringement claims in *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 572 U.S. 915 (2014).  (*See* 2013 Lawsuit, Doc. No. 299 at 5 (explaining that the claims cannot succeed under the governing law).)  Further, the Court dismissed the trade secret claim with prejudice insofar as it is based on misappropriation after April 21, 2005, the date Wilson published his alleged trade secrets in a patent application.  (2013 Lawsuit, Doc. No. 388 at 26 (holding that Wilson Wolf had not established and could not claim any trade secret "separate from the information disclosed in [the Wilson Wolf] patents").)  The claims remaining in the 2013 Lawsuit include correction of inventorship, breach of contract, and trade secret misappropriation.  That case is set for trial beginning on November 7, 2022.

In November 2015, Corning requested an interference proceeding between another Wilson Wolf cell culture patent—U.S. Patent No. 8,809,044 (the "'044 Patent")—and Corning's U.S. Patent Application No. 14/814,267 under 35 U.S.C. § 135(a).  *Wilson v. Martin*, 789 F. App'x 861, 866 (Fed. Cir. 2019).  The U.S. Patent and Trial Appeal Board ("PTAB") issued a decision and judgment invalidating all challenged claims of the '044 Patent on the ground that they were anticipated by prior art.  *Id*. at 866-68.  That decision was affirmed by the Federal Circuit.  *Id*. at 873.

Subsequently, in or around late 2019 and early 2020, Wilson Wolf filed several federal patent infringement actions against customers and end-users of Corning's

3

HYPERStack product.² These include lawsuits against Brammer Bio, LLC ("Brammer"), Sarepta Therapeutics, Inc. ("Sarepta"), and Nationwide Children's Hospital, Inc. and The Research Institute at Nationwide Children's Hospital (together, "Nationwide") (collectively "Customers"). *See Wilson Wolf Mfg. Corp. v. Brammer Bio, LLC*, Civ. No. 1:19-2315 (D. Del.); *Wilson Wolf Mfg. Corp. v. Nationwide Children's Hosp., Inc. et al.*, Civ. No. 20-192 (S.D. Ohio); *Wilson Wolf Mfg. Corp. v. Sarepta Therapeutics, Inc.*, Civ. No. 1:19-2316 (D. Del.) (together "Customer Lawsuits"). In each of these cases, Wilson Wolf alleges that the user of Corning's HYPERStack product (or a user of cells manufactured using the HYPERStack product) directly infringes the claims of the one or all of the patents-in-suit—U.S. Patent No. 9,441,192 (the "'192 Patent"), U.S. Patent No. 8,697,443 (the "'443 Patent"), and U.S. Patent No. 9,732,317 (the "'317 Patent") (the "patents-in-suit").³ The Customers have asserted defenses, including noninfringement and invalidity, and Sarepta and Nationwide both assert the "safe harbor" defense. Each of the Customer Lawsuits has been stayed. Both Brammer and Nationwide agreed to be bound by the findings related to infringement and validity in the DJ Action. Sarepta also moved to stay after the court in that case denied its motion to

---

²     Corning asserts that before these lawsuits were filed, Wilson Wolf threatened to sue Corning's customers and end-users. (Doc. No. 73 ("Am. Compl.") ¶ 19.)

³     Corning asserts that the complaints in the Customer Lawsuits all rely on an article written by Corning employees and a YouTube video produced by Corning to support the patent infringement allegations. Thus, Corning asserts that the issues in those suits, namely how the HYPERStack products are used in accordance with Corning's own instructions, are common to all of the Customer Lawsuits.

dismiss brought on the grounds that the accused conduct fell within the scope of the "safe harbor."

In this DJ Action, Corning seeks a declaration resolving questions of patent infringement and validity with respect to the patents-in-suit. In short, Corning alleges that, having suffered invalidation of the '044 Patent, Wilson and Wilson Wolf launched a retaliatory litigation campaign against its Customers. Corning seeks a declaration that the use of Corning's HYPERStack cell culture device by Brammer, Sarepta, and Nationwide does not infringe the patents-in-suit, that the patents-in-suit are invalid, and that Defendants tortiously interfered with Corning's existing and prospective customers. In Count Ten, Corning seeks a declaration that the safe harbor defense immunizes Brammer, Sarepta, and Nationwide from Wilson Wolf's claim of infringement. Corning alleges, on information and belief, that the HYPERStack users employ HYPERStack vessels solely for uses reasonably related to the development and submissions of information under federal laws regulating the manufacture, use, or sale of drugs or veterinary biological products, including the Food and Drug Administration ("FDA"). (Doc. No. 73, Am. Compl. ¶¶ 20-22.)

In November 2020, Defendants served discovery on Corning, which included requests for information on the purpose for which each HYPERStack product was used by Corning's Customers, and later asserted that they should be entitled to complete third-party discovery from Corning's Customers before submitting infringement contentions. According to Defendants, Corning has not fully complied with these discovery requests. Defendants also sought discovery from Corning's Customers regarding the "safe harbor"

defense, but Defendants submit that they either objected to the subpoenas or inadequately complied based on the assertion that the requests were no longer relevant because of Corning's indication that it desired to withdraw its safe harbor claim.

On February 19, 2021, Corning filed an Amended Complaint, again alleging that Defendants are engaged in a patent enforcement and litigation campaign that is based on non-infringed, invalid, and unenforceable patents. (Am. Compl. ¶ 1.) For example, Corning alleges that when Defendants filed lawsuits against the HYPERStack Customers, Defendants knew, or should have known, that the patents-in-suit were unenforceable in light of Defendants' fraudulent conduct in obtaining the patents from the PTO. (*Id.* ¶ 26.)[4] Corning also alleges that Defendants knew, or should have known, that the claims in the '044 Patent, which allegedly underlie the patents-in-suit, had been invalidated by the PTAB. (*Id.*) Corning further alleges that Defendants knew, or should have known, that patent infringement lawsuits against the HYPERStack users were barred by the *Kessler* doctrine and the safe harbor established by 35 U.S.C. § 271(e)(1). (*Id.*) Corning also alleges that Defendants filed the lawsuits against the HYPERStack users for the "improper and unjustified purposes of interfering with Corning's existing and prospective business relationships with its customers." (*Id.* ¶ 27.)[5]

---

[4]  In its Amended Complaint, Corning does not assert a claim of inequitable conduct based on the provision of misleading data. Corning's allegations of inequitable conduct with respect to the '192 and '443 Patents are summarized in Counts Two and Five, (Am. Compl. ¶¶ 183-86 & 203-206), and the allegations of inequitable conduct with respect to the '317 Patent are summarized in Count Eight (*id.* ¶¶ 223-25).

[5]  The Court dismissed Corning's inequitable conduct claim as to the '317 Patent (Count Eight) and inequitable conduct claims in Counts Two and Five, insofar as they are

In January 2022, Corning approached Defendants about dismissing Count Ten, the "safe harbor" claim. At that time, Defendants sought clarification on the status of discovery responses to their requests regarding Corning Customer's use of HYPERStack products. Defendants responded to Corning's request to dismiss Count Ten, in part, as follows:

> Corning has purported to assert a safe harbor defense to noninfringement on behalf of its customers for more than two years . . . . Wilson Wolf has pointed out since the initial case management conference that Corning has unfairly engineered a situation in which the customers—the ones with information on how and why they cultured cells in the HYPERStack—are absent from this case. Corning has no information on these critical facts and had no factual basis to assert this defense in the first place. Corning's customers, who have been very happy to have the cases against them stayed, have the facts but are refusing to comply with Rule 45 subpoenas seeking those facts.

(Doc. No. 169-32.)

Corning now moves to voluntarily dismiss Count Ten (safe harbor claim) of its Amended Complaint without prejudice. In addition, Defendants move to dismiss Corning's Complaint in its entirety for lack of standing.

## DISCUSSION

### I.     Corning's Motion to Dismiss Count Ten

Federal Rule of Civil Procedure 41(a)(1) & (2) provides, in part, that after "the opposing party serves either an answer or a motion for summary judgment . . . an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." A motion to dismiss an action under Rule 41(a)(2) falls to the sound

---

based on allegations that Wilson Wolf withheld adverse data from the USPTO during prosecution of the '192 and '443 Patents. (Doc. No. 140.)

7

discretion of the district court. *Herring v. City of Whitehall*, 804 F.2d 464, 466 (8th Cir. 1986). A court is not required to dismiss a claim upon request. Instead, courts take a variety of factors into account, including: "whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendants." *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213–14 (8th Cir. 2011) (citing *Hamm v. Rhone–Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999)). Typically, a dismissal under Rule 41(a)(2) is without prejudice. *See* Fed. R. Civ. P. 41(a)(2).

The purpose of Rule 41(a)(2) is "primarily to prevent voluntary dismissals which unfairly affect the other side." *Metro. Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co.*, 793 F. Supp. 205, 206 (D. Minn. 1992). Voluntary dismissal "should not be granted if a party will be prejudiced by the dismissal." *Metro. Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co.*, 999 F.2d 1257, 1262 (8th Cir. 1993) (citation omitted). The party opposing voluntary dismissal "must be able to demonstrate some plain legal prejudice flowing to [it] as a result of the dismissal." *Hoffmann v. Alside, Inc.*, 596 F.2d 822, 823 (8th Cir. 1979) (citation omitted). "Courts generally will grant dismissals where the only prejudice the defendant will suffer is that resulting from a subsequent lawsuit." *Metro. Fed. Bank*, 793 F. Supp. at 206 (citation omitted). In addition, a court may attach terms to the dismissal that it "considers proper." *See* Fed. R. Civ. P. 41(a)(2). These conditions can include a requirement that plaintiff pay defendant reasonable attorney fees and costs

incurred in defending the dismissed claim. *See Belle-Midwest, Inc. v. Missouri Prop. & Cas. Ins. Guarantee Ass'n*, 56 F.3d 977, 978-79 (8th Cir. 1995).

In Count Ten, Corning seeks a declaration that Corning's customers and end-users of the HYPERStack product do not infringe Defendants' patents because the alleged infringing conduct is exempted under the FDA "safe harbor" created by 35 U.S.C. § 271(e)(1). That provision provides that:

> it shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention . . . solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products.

35 U.S.C. § 271(e)(1).

Corning submits that it asserted this defense because the defense had been raised in two of the three Customer Lawsuits, but that in view of the discovery that Defendants seek—which is directed to the purpose of each individual Customer's use of the HYPERStack product—the application of the "safe harbor" defense turns on facts that are unique to each Customer. Thus, Corning contends that the "safe harbor" defense is best litigated (if necessary)[6] in the context of each of the Customer Lawsuits. Corning further asserts that it is not engaging in forum-shopping and that dismissal of the "safe harbor" claim from this action without prejudice is appropriate and would provide the

---

[6] As recognized by the courts in two of the Customer Lawsuits, a merits decision in this case in Corning's favor would likely eliminate the need to litigate the Customer Lawsuits. That is, without valid, enforceable patents, or in the event the patents are found not to be infringed, the Customer Lawsuits and, in turn, the safe harbor defense, will not need to be litigated.

most efficient way to proceed. This would reserve the safe harbor issue for individual determination in the Customer Lawsuits should such a determination become necessary. Corning further argues that the voluntary dismissal of Count Ten will neither prejudice Defendants nor waste judicial time or effort. Corning points out that fact discovery in this case is in its early stages and that Defendants, having filed the Customer Lawsuits, would have to litigate the safe harbor defense individually in those cases.

Defendants argue that any existing inefficiencies have been created by Corning and that while it may be more efficient for individual factual issues relating to the Customer's use of the HYPERStack to be decided in the individual Customer Lawsuits, Defendants have been prejudiced by wasting time and resources litigating claims that Corning did not have a basis to assert in this action. Defendants do not oppose the dismissal of Count Ten, but request that Count Ten be dismissed *with* prejudice or dismissed upon the condition that Corning reimburse Defendants for their fees incurred seeking discovery and defending this claim and that Corning be required to produce any relevant information related to the safe harbor defense.

Having carefully considered the parties' arguments, the Court finds that voluntary dismissal of Count Ten without prejudice is warranted. However, the Court reserves the right to have Corning reimburse Defendants for costs and fees directly related to the litigation of Count Ten in this action should circumstances warrant—for example, should any work done by Defendants in this action be irrelevant in subsequent litigation because of the ultimate merits decision in this case.

## II.  Defendants' Motion to Dismiss

Defendants move to dismiss the entire DJ Action, arguing that the safe harbor defense (as discussed above) is not only best litigated in the Customer Lawsuits, but that it can *only* be asserted in those suits.  Defendants submit that the same is true for all of Corning's declaratory action claims and that there is no "real and substantial" controversy between Corning and Defendants regarding the patents-in-suit because Defendants have not accused Corning of infringing any of the patents-in-suit.  Instead, Defendants sued Corning's Customers.  Thus, Defendants argue that Corning has standing to intervene in the Customer Lawsuits, but *not* to bring this separate lawsuit.  Defendants further argue that Corning lacks standing to assert claims related to the asserted method patents because the Customers, and not Corning, practice the method claims, that Corning lacks standing under an indemnity theory, and that Corning's tortious interference claim should be dismissed.

Corning argues that it initiated the current declaratory judgment action to protect itself and its customers and end-users by resolving common issues including whether Corning's HYPERStack product and its use (in accordance with Corning's protocols and instructions) infringes the patents-in-suit, whether the patents-in-suit are valid, and whether Defendants should be liable to Corning for tortiously interfering with Corning's prospective economic advantage.  Corning further argues that this case "has every hallmark of a case or controversy."  Corning points to evidence that Defendants have directly asserted that Corning infringes the patents-in-suit.  For example, in the 2013 Lawsuit, Wilson Wolf alleges that Corning's HYPERStack product uses Wilson Wolf's

technology and seeks to disgorge Corning's profits on HYPERStack sales, including sales made to the Customers in the Customer Lawsuits. In addition, in a letter dated July 31, 2019, counsel for Defendants wrote that Defendants were "about to file a standalone patent infringement suit against Corning based on [the '192, '443, and '317] patents. . . nam[ing] several major Corning customers that use the HyperStack product line" while noting that Defendants had "won issuance of three patents that cover the core of our cell culture innovations." (Doc. No. 192 ¶¶ 4, 5.) Corning argues that standing would exist even if Defendants had not directly accused Corning of infringement, based on the history of the dispute between Corning and Defendants, which Corning maintains demonstrates that Corning faced a threat of patent lawsuits so as to create a case or controversy. To this point, Corning relies on caselaw supporting the notion that a patent-holder cannot eliminate a valid controversy by avoiding a direct assertion of pending litigation or infringement. *See, e.g.*, *Arris Grp., Inc. v. British Telecomm's PLC*, 639 F.3d 1368, 1379 (Fed. Cir. 2011). Further, Corning points out that despite Defendants' contention that they could not have brought patent infringement claims against Corning as a manufacturer because Corning does not culture cells, the '317 Patent contains only apparatus claims (and Corning manufactures the apparatus) and Defendants rely on evidence of Corning's instructions on how to use the HYPERStack product to support its infringement claims against the Customers. Separately, Corning argues that it has standing because it is obligated to indemnify its customers.

A party has standing to bring an action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), if an "actual controversy" exists. This is the same as an Article III

"case or controversy." *See Arris Grp., Inc.*, 639 F.3d at 1373. Here, the Court must determine whether an "actual case or controversy," over which the Court has subject matter jurisdiction, exists with respect to Corning's claims against Defendants. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343-45 (Fed. Cir. 2007) (outlining the basic principles for determining declaratory judgment jurisdiction in patent disputes); *see also Defenders of Wildlife, Friends of Animals and Their Env't v. Hodel*, 851 F.2d 1035, 1038 (8th Cir. 1988) ("Article III of the Constitution limits the power of the federal courts to actual 'cases' and 'controversies.' "); *Graco, Inc. v. Techtronic Indus. N. Am., Inc.*, Civ. No. 09-1757, 2010 WL 915213, at *3 (D. Minn. Mar. 9, 2010). For jurisdiction under the Declaratory Judgment Act to attach, the facts alleged must, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation and quotation omitted).

The Federal Circuit "ha[s] recognized that, where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." *Arris Grp.*, 639 F.3d at 1375. At least one Court has stated that these are not the only circumstances under which customer lawsuits can support jurisdiction over a

13

declaratory judgment action brought by a supplier; and recognized that "a declaratory judgment supplier plaintiff may have standing to sue a patentee for non-infringement based on the nature of the patentee's accusations against the supplier's customer." *See In re Mobile Telecomms. Techs., LLC*, 247 F. Supp. 3d 456, 461-62 (D. Del. 2017) ("[T]he existence of indemnification obligations or theories of indirect infringement are not prerequisites for establishing subject matter jurisdiction . . . [a] declaratory judgment supplier plaintiff may have standing to sue a patentee for non-infringement based on the nature of the patentee's accusations against the supplier's customer") (citation omitted).

After careful review of the record, the Court concludes that Corning has standing to bring this action. First, in the July 31, 2019 letter, Wilson Wolf expressly stated that it had been issued patents that cover "the core" of their cell culture inventions and stated that they were "about to file a standalone patent infringement suit against Corning based on these patents . . . nam[ing] several major Corning customers that use the HyperStack product line." (Doc. No. 192 ¶¶ 4-5.)  This threat of litigation for the asserted infringement of the now patents-in-suit is enough to show that there is a substantial controversy between the parties.[7]  Moreover, even without that explicit threat of

---

[7]  The Court notes that while this communication was purportedly sent as a settlement communication, the Court properly considers it here as evidence of a threatened lawsuit.  Federal Rule of Evidence 408(a) prohibits the use of certain compromise offers or statements made during compromise negotiations "either to prove or disprove the validity or amount of a disputed claim or to impeach."  The evidence is not being used "to prove or disprove the validity" of a claim disputed in the 2013 Lawsuit or to impeach a witness.  The Court also respectfully disagrees with Defendants' argument that any threat contained in the July 2019 letter was stale.  In addition, while not attached to the Amended Complaint, the letter has been submitted in opposition to the motion to dismiss and is properly considered.

14

litigation, the history of the dispute between the parties over cell culture technology creates a case or controversy. In each of the Customer Lawsuits, Defendants repeatedly reference Corning's HYPERStack product and rely exclusively on evidence of Corning's instructions on how to use the HYPERStack product to support their claims of infringement. There appears to be no meaningful difference between the allegations in each suit, making Corning's HYPERStack product and Corning instructions central to each dispute.[8] In addition, in its infringement contentions, Corning's HYPERStack product is central. (Doc. No. 191-2.) Defendants' infringement allegations against Corning's customers do not appear to be customer-specific and, instead, involve the HYPERStack product as sold and instructed to be used by Corning. The Court finds that these circumstances create a substantial and non-hypothetical controversy about whether Corning's HYPERStack product infringes the patents-in-suit. *See, e.g.*, *In re Mobile Telecomms. Techs.*, 247 F. Supp. 3d at 461-62. Similarly, the Court finds that Defendants have implicitly asserted that Corning is liable for indirect, induced, or contributory infringement, and that those assertions give rise to jurisdiction. *See, e.g.*, *Arris Grp.*, 639 F.3d at 1375 (finding an actual controversy concerning contributory infringement); *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014) (concluding that a substantial controversy existed regarding induced infringement where

---

[8] For example, in the *Brammer* action, Wilson Wolf alleges that Brammer "has infringed the patents in suit through its use of the Corning HYPERStack cell culture device." (Doc. No. 191-1 ¶ 27.) Further, Wilson Wolf supports these infringement claims with written and video instructions provided to Customers by Corning. (*Id*. ¶¶ 28-30).

claim charts cite to user guides that provide customers with necessary components to infringe).

Finally, Corning alleges that it is contractually obligated to indemnify and defend Brammer Bio and Nationwide against infringement claims involving HYPERStack. (Am. Compl. ¶ 28.) This obligation, given the Customer Lawsuits, also establishes a reasonable apprehension of suit. *See, e.g.*, *Cognex Corp. v. VCode Holdings, Inc.*, Civ. No. 06-1040, 2006 WL 3043129 at *6 (D. Minn. Oct. 24, 2006).[9]

As to Corning's claim for tortious interference, the Court also finds that it has jurisdiction. This claim is based on diversity jurisdiction and presents an actual case or controversy in alleging that the Customer Lawsuits are "objectively baseless" and intended to disrupt Corning's customer relationships. (Am. Comp. ¶ 259.)

For all of the above reasons, the Court concludes that a real and substantial controversy exists and the Court has standing over Corning's DJ Action.

## CONCLUSION

For the reasons discussed above, the Court grants Corning's motion to dismiss Count Ten while reserving the right to require Corning to reimburse Defendants for costs and fees directly related to the litigation of Count Ten in this action should circumstances warrant. In addition, having found that Corning has standing to bring its declaratory judgment claims, the Court denies Defendants' motion to dismiss.

---

[9] Defendants point out that Corning does not have an indemnification agreement with Sarepta.

**ORDER**

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Corning's Motion to Dismiss Count Ten Without Prejudice (Doc. No. [160]) is **GRANTED** and Count Ten of the Amended Complaint (Doc. No. [73]) is **DISMISSED WITHOUT PREJUDICE**.

2. Defendants' Motion to Dismiss (Doc. No. [179]) is **DENIED**.

Dated:  November 4, 2022               s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       United States District Judge