UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Corning Incorporated,                                      Civil No. 20-700 (DWF/TNL)

        Plaintiff,

v.                                                                          **MEMORANDUM**
                                                                    **OPINION AND ORDER**
Wilson Wolf Manufacturing Corp.
and John R. Wilson,

        Defendants.

## INTRODUCTION

This matter is before the Court on Defendant Wilson Wolf Manufacturing Corp. and John R. Wilson's (together, "Defendants") requests for permission to file motions for reconsideration of the Court's construction of the "more than 2.0 cm" limitations of the '192 Patent (Doc. No. 293), the Court's construction that the '192 Patent does not claim scaffolded embodiments (Doc. No. 306), and the Court's construction of "scaffolds/shelves" in the '443 Patent (Doc. No. 307). Defendants also bring a separate Motion for Certification under 28 U.S.C. § 1292(b). (Doc. No. 294.) For the reasons set forth below, the Court denies the requests for permission to file motions for reconsideration and the motion for certification.

## BACKGROUND

The parties have been litigating over cell culture technology for more than ten years. Much of the factual background of the parties' dispute is set forth in prior orders in the case captioned *Wilson et al. v. Corning Inc.*, Case No. 13-cv-210 (D. Minn. filed

Jan. 25, 2013) (the "2013 Lawsuit") (*see* 2013 Lawsuit, *e.g.*, Doc. No. 388), as well as the Court's prior orders in the present action (the "DJ Action"). (*See, e.g.*, Doc. Nos. 43, 285.)

In short, in the 2013 Lawsuit, Defendants sued Corning, asserting claims for patent infringement (alleging that Corning infringed two of their patents (the '426 Patent and the '427 Patent (the "Wilson Wolf Patents")))[1], breach of contract, misappropriation of trade secrets, and inventorship claims with respect to three Corning patents. In that case, Defendants allege that Corning obtained Wilson Wolf's cell culture technology under a confidentiality agreement and that Corning subsequently developed products using that technology. On March 17, 2015, the Court dismissed the claims for patent infringement of the Wilson Wolf Patents with prejudice, after the Supreme Court disallowed divided infringement claims in *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 572 U.S. 915 (2014). (*See* 2013 Lawsuit, Doc. No. 299 at 5 (explaining that the claims cannot succeed under the governing law).) Further, the Court dismissed the trade secret claim with prejudice insofar as it is based on misappropriation after April 21, 2005, the date Wilson published his alleged trade secrets in a patent application. (2013 Lawsuit, Doc. No. 388 at 26 (holding that Wilson Wolf had not

---

[1] The '426 and '427 Patents stem from the same provisional application as U.S. Patent No. 9,441,192 (the "'192 Patent") and U.S. Patent No. 8,697,443 (the "'443 Patent") (the "Method Patents").

established and could not claim any trade secret "separate from the information disclosed in [the Wilson Wolf] patents").)[2]

In or around late 2019 and early 2020, Wilson Wolf filed several federal patent infringement actions against customers and end-users of Corning's HYPERStack product.[3] In each of these cases, Wilson Wolf alleges that the user of Corning's HYPERStack product (or a user of cells manufactured using the HYPERStack product) directly infringes the claims of one or both of the Method Patents as well as an apparatus patent, U.S. Patent No. 9,732,317 (the "'317 Patent"). The Court previously explained that in each of the Customer Lawsuits, Defendants relied exclusively on evidence of Corning's instructions on how to use the HYPERStack product to support their infringement claims. (Doc. No. 285 at 15.) Corning indemnified its direct customers and brought this DJ Action. The Customer Lawsuits have been stayed in favor of this case.

---

[2] The claims remaining in the 2013 Lawsuit came before the Court on a bench trial in November 2022. Post-trial motions and proposed findings were filed in January and February 2023, and most recently the parties filed their final positions on disputed exhibits. Now that post-trial filings are complete, the Findings of Fact and Conclusions of Law in the 2013 Litigation are forthcoming.

[3] These include the following lawsuits: *Wilson Wolf Mfg. Corp. v. Brammer Bio, LLC,* Civ. No. 1:19-2315 (D. Del.); *Wilson Wolf Mfg. Corp. v. Nationwide Children's Hosp., Inc. et al.*, Civ. No. 20-192 (S.D. Ohio); *Wilson Wolf Mfg. Corp. v. Sarepta Therapeutics, Inc.*, Civ. No. 1:19-2316 (D. Del.) (together "Customer Lawsuits").

As noted in a prior order, Corning submits evidence that Defendants threatened that they were "about to file a standalone patent infringement suit against Corning" also naming several major Corning customers and end-users of the HYPERStack product. (Doc. No. 305 ("Poullaos Decl.") ¶ 3, Ex. 1 ¶ 5.) Similarly, in its Amended Complaint, Corning asserts that before these lawsuits were filed, Wilson Wolf threatened to sue Corning's customers and end-users. (Doc. No. 73 ("Am. Compl.") ¶ 19.)

In this DJ Action, Corning seeks a declaration of patent non-infringement, invalidity, and unenforceability of the Method Patents and the '317 Patent (collectively, the "Patents-In-Suit") as well as a declaration that Defendants tortiously interfered with Corning's existing and prospective customers. (*See generally* Am. Compl.) In short, Corning alleges that, having suffered invalidation of the '044 Patent,[4] Defendants launched a retaliatory litigation campaign against Corning's Customers that is based on non-infringed, invalid, and unenforceable patents. For example, Corning alleges that when Defendants filed lawsuits against the HYPERStack Customers, Defendants knew, or should have known, that the Patents-In-Suit were unenforceable in light of Defendants' fraudulent conduct in obtaining the patents from the PTO. (*Id.* ¶ 26.)[5] Corning also alleges that Defendants knew, or should have known, that the claims in the '044 Patent, which allegedly underlie the Patents-In-Suit, had been invalidated by the PTAB. (*Id.*) Corning further alleges that Defendants knew, or should have known, that patent infringement lawsuits against the HYPERStack users were barred by the *Kessler* doctrine and the safe harbor established by 35 U.S.C. § 271(e)(1). (*Id.*) Corning also

---

[4]    In November 2015, Corning requested an interference proceeding between another Wilson Wolf cell culture patent—U.S. Patent No. 8,809,044 (the "'044 Patent")—and Corning's U.S. Patent Application No. 14/814,267 under 35 U.S.C. § 135(a). *Wilson v. Martin*, 789 F. App'x 861, 866 (Fed. Cir. 2019). The U.S. Patent and Trial Appeal Board ("PTAB") issued a decision and judgment invalidating all challenged claims of the '044 Patent on the ground that they were anticipated by prior art. *Id.* at 866-68. That decision was affirmed by the Federal Circuit. *Id.* at 873.

[5]    Corning's allegations of inequitable conduct with respect to the '192 and '443 Patents are summarized in Counts Two and Five, (Am. Compl. ¶¶ 183-86 & 203-06), and the allegations of inequitable conduct with respect to the '317 Patent are summarized in Count Eight (*id.* ¶¶ 223-25).

4

alleges that Defendants filed the lawsuits against the HYPERStack users for the "improper and unjustified purposes of interfering with Corning's existing and prospective business relationships with its customers." (*Id.* ¶ 27.)

On May 27, 2022, the Court issued a *Markman* order construing the claim terms of the Patents-In-Suit. (Doc. No. 184.) After that order, Wilson Wolf indicated that it did not intend to pursue infringement claims based on the Method Patents and Defendants stipulated that they would not submit expert reports in support of any such infringement claims. (Poullaos Decl. ¶ 4, Ex. 2 at 1 ("Wilson Wolf has agreed that based on the Court's rulings it does not intend to go forward on the '192 and '443 patents."); Doc. No. 284 ¶ 1 ("Defendants will not tender expert reports opposing Corning's claims for declaratory judgment of noninfringement for U.S. Patent No. 9,441,192 (Count I) or U.S. Patent No. 8,697,443 (Count IV).").)[6]

Defendants moved to dismiss Corning's declaratory claims for lack of standing. In the November 4, 2022, Order, the Court denied that motion. (*See* Doc. No. 285.) Specifically, the Court concluded that Corning has standing to bring this action on the following grounds: (1) Defendants expressly threatened litigation against Corning and its Customers before filing the Customer Lawsuits; (2) even if Defendants had not expressly threatened litigation, the history of the dispute between the parties over cell-culture technology created a case or controversy; (3) Defendants' infringement allegations rely exclusively on evidence of Corning's instructions on how to use the HYPERStack

---

6   Corning submits that Defendants have refused to stipulate to noninfringement.

product; (4) Defendants implicitly asserted that Corning is liable for indirect, induced, or contributory infringement; and (5) the fact that Corning was obligated to indemnify two of the Customers created a reasonable apprehension of suit. (*Id*. at 14-16.)

On February 8, 2023, Defendants requested permission to seek reconsideration of the Court's claim construction of the "more than 2.0 cm" limitations of the '192 Patent. (Doc. No. 293.) Also, more than three months after the November 2022 Order, Defendants filed their motion to certify interlocutory appeal. (Doc. No. 294.) In addition, Defendants move for leave to file a reply in support of their motion for interlocutory appeal (Doc. No. 308).[7] On March 16, 2023, Defendants requested permission to seek reconsideration of the Court's construction that the '192 Patent does not claim scaffolded embodiments (Doc. No. 306) and the Court's construction of the term "scaffolds/shelves" in the '443 Patent (Doc. No. 307).

The Court considers the motions and requests below.

## DISCUSSION

### I. Defendants' Requests to File a Motion to Reconsider

Defendants file three separate requests for permission to file motions to reconsider three of the Court's claim constructions as stated in the *Markman* Order. First, Defendants seek reconsideration of the Court's construction of the "more than 2.0 cm" limitations of the '192 Patent. (Doc. No. 293.) Second, Defendants request permission

---

[7] Corning opposes the motion to file a reply, arguing that the parties have sufficiently briefed the issues of jurisdiction and standing and that further briefing is unnecessary. (Doc. No. 314.) The Court agrees and denies Defendants' motion to file a reply.

to file a motion for reconsideration of the Court's construction that the '192 Patent does not claim scaffolded embodiments (Doc. No. 306).  Third, Defendants seek reconsideration of the Court's construction of the term "scaffolds/shelves" in the '443 Patent.  (Doc. No. 307.)

Under Local Rule 7.1(j), a party must show "compelling circumstances" to obtain permission to file a motion to reconsider.  D. Minn. L.R. 7.1(j).  A motion to reconsider should not be employed to relitigate old issues, but rather to "afford an opportunity for relief in extraordinary circumstances."  *Dale & Selby Superette & Deli v. U.S. Dept. of Agric.*, 838 F. Supp. 1346, 1348 (D. Minn. 1993).

Defendants argue that the Court's construction of the "more than 2.0 cm" limitations of the '192 Patent excludes embodiments disclosed in the specification based on mistakes of fact and law.  In particular, Defendants point out that the Court found that the asserted benefit of the claimed invention is that it allows more continuous medium to reside above the cells (Doc. No. 184 at 13) but argue that this is only *one* possible benefit of the claimed invention.  Defendants assert that the embodiment of Figure 6 shows media to the side of and below the cells, with a vertical wall interposed.  Defendants further submit that during the November 2022 trial in the 2013 Litigation, the Court heard testimony regarding Figure 6 and other new evidence that supports their claim construction, namely that the media did not have to be directly above the cells to benefit the cells.  Defendants also argue that the Court should not interpret terms so as to exclude embodiments and that there was no unmistakable disclaimer of the embodiments.

Corning opposes Defendants' request, arguing that they have failed to meet their burden of showing compelling circumstances. First, Corning argues that there is no new evidence that was not available during claim construction because the purported "new evidence" is the testimony of John Wilson, which could have been presented earlier. Moreover, Corning argues that the testimony about the benefits of having media to the sides and below the cells was made at the *Markman* stage. Second, Corning argues that there was no "error of law" and that the Court correctly recognized that Wilson had divided his claims—the '192 Patent directed at his vertical bag device and the '443 Patent directed to his scaffolded devices.

Defendants also separately request permission to file a motion for reconsideration of the Court's construction that the '192 Patent does not claim scaffolded embodiments (Doc. No. 306) and the Court's construction of the term scaffolds/shelves in the '443 Patent (Doc. No. 307). Defendants point to a March 7, 2023 decision of the United States Patent and Trademark Office ("USPTO") in an *ex parte* proceeding, finding the claims of the '192 Patent claims to be patentable after considering scaffolded prior art (DeMilla). (Doc. No. 306, Ex. A at 2-3.) Defendants argue that the ruling contradicts the Court's claim construction that the '192 Patent does not claim scaffolded embodiments because the examiner applied scaffolded prior art to the '192 Patent claims. Defendants also seek reconsideration of the Court's construction of the term scaffolds/shelves in the '443 Patent based on a February 10, 2023 decision by the PTAB. (Doc. No. 307, Ex. A.) Defendants argue that the PTAB did not recognize any limitation on the materials from

8

which the scaffolds can be made. Defendants argue that this decision highlights an error by the Court in importing a limitation into the claims in this case.

Corning again opposes Defendants' requests, arguing that Defendants' multiple attempts to reconsider do not demonstrate any compelling circumstances that would justify any such reconsideration and instead would unnecessarily multiply this litigation. Corning argues that the USPTO's decision regarding the '192 Patent is not relevant to the Court's construction of the '192 Patent as not claiming scaffolded embodiments because the USPTO did not address whether the '192 Patent claims scaffolded embodiments or not. Instead, Corning underscores that the sole issue before the USPTO was whether the DeMilla prior art teaches "a state of static cell culture." Similarly, Corning argues that the PTAB did not address the issue of "scaffolds" as part of the '443 Patent proceedings and that the Board's decision did not require the construction of the term "scaffolds." Instead, Corning points out that the PTAB reviewed the Examiner's rejection of the '443 Patent over prior art because of a different claim limitation, the analysis of which did not require the construction of the term "scaffolds."

Having fully considered the submissions of the parties, the Court concludes that Defendants have failed to demonstrate compelling circumstances to justify a motion to reconsider any of the Court's claim constructions discussed above. In particular, Defendants have not pointed to any new, material evidence that could not have been presented at the *Markman* stage of this litigation. In addition, with respect to Defendants' requests based on recent rulings by the USPTO, Defendants have not demonstrated that those decisions undermine, or even bear in a material way on, the Court's construction of

the terms in the *Markman* Order.  Therefore, the Court respectfully denies Defendants' requests to file motions to reconsider.

## II. Defendants' Motion for Certification under 28 U.S.C. § 1292(b)

Defendants move for certification under 28 U.S.C. § 1292(b), arguing that the Court's November 4, 2022, Order denying their motion to dismiss involves a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal of the Order may materially advance the ultimate termination of this action.  In particular, Defendants submit that the questions posed are unique, namely (1) whether a manufacturer (Corning) has standing to assert claims for declarations that its customers do not perform the steps claimed in a method patent when its customers are not parties to the suit; and (2) whether a manufacturer in those circumstances has standing to seek declarations that it does not directly infringe.

Defendants submit that the Court found a substantial and non-hypothetical controversy about whether Corning's HYPERStack product infringes the patents-in-suit, but did not address whether Corning's claims for noninfringement of the Method Patents by its Customers are hypothetical.  Defendants argue that there is no authority on the question of standing relevant to this case—where direct infringement can only be determined by considering the actions of customers who are not parties to the case.  Defendants further argue that allowing the Federal Circuit to consider the jurisdictional question would curb the expense and duration of the litigation and would allow for the most efficient use of juridical resources.

Corning opposes the motion, arguing that it is an "untimely filibuster meant to avoid narrowing this case and to instead increase the expense of this litigation." (Doc. No. 304 at 5.) Corning submits that the question of whether Corning can maintain its declaratory judgment claims is answered by well-settled law and that Defendants, instead, inappropriately try to narrow the relevant question to whether standing exists "in cases like this where direct infringement can only be determined by considering the actions of customers." (*Id*. (emphasis removed).) Corning argues that the narrower question is factually inaccurate because the Court already found that Defendants' infringement allegations against the Customers rely exclusively on Corning's instructions for use. (Doc. No. 295 at 15.) Corning further submits that the questions posed by Defendants are not questions that would support certification.

Section 1292(b) creates a narrow exception to the final judgment rule and allows district courts to certify orders for interlocutory appeal if certain criteria are satisfied and the district court determines that certification is appropriate. *See* 28 U.S.C. § 1292(b); *see also TCF Banking & Sav., F.A. v. Arthur Young & Co.*, 697 F. Supp. 362, 366 (D. Minn. 1988). The statute provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). Section 1292 is "to be used only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation. It

11

was not intended merely to provide review of difficult rulings in hard cases." *Union Cty., Iowa v. Piper Jaffray & Co.*. 525 F.3d 643, 646 (8th Cir. 2008) (citation omitted).  Thus, a motion for certification for interlocutory appeal "must be granted sparingly, and the movant bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted."  *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994) (noting that "[i]t has . . . long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants") (citation omitted).

    Here, Defendants have not met their burden of demonstrating that immediate appeal on the questions presented is warranted.  The Court already determined that Corning has standing to bring its declaratory judgment claims.  In particular, the Court concluded that there was a "case or controversy" on various grounds, including Defendants' express threat of litigation against Corning and its Customers, the history of the cell-culture technology dispute between the parties, and Corning's obligation to indemnify two of the Customers.  (*See* Doc. No. 285 at 14-16.)  Defendants' proposed questions for certification will have no material bearing on these grounds or the Court's ultimate determination that Corning has standing.

    In addition, Defendants argue that this case is unique because Corning does not know the particular ways in which its Customers use HYPERStack products and that the question of whether a manufacturer has standing to assert claims for declarations that its customers do not perform the steps claimed in a method patent when its customers are not parties to the suit is controlling.  Defendants argue that there is no authority on the

12

question of standing here—where direct infringement can only be determined by considering the actions of non-party customers. However, in its November 2022 Order, the Court explained that in the Customer Lawsuits, Defendants alleged that the Customers infringed the Method Patents by using Corning's HYPERStack products in the way that Corning instructs it to be used. Therefore, the relevant issue centers on Corning's product as used according to Corning's instructions. As explained in the prior order, Corning has standing to challenge Defendants' allegations that Corning's Customers infringe the Method Patents when they use Corning's product per Corning's instructions.

Further, Defendants have not established that the resolution of their proposed questions would materially advance the litigation. In addition to Corning's claims seeking declarations of non-infringement, this DJ Action involves claims for declarations on invalidity, tortious interference, and inequitable conduct. Even if the Court were to certify the question of subject matter jurisdiction over noninfringement claims, the other claims would remain. Indeed, certifying the question would unnecessarily delay the proceedings and create piece-meal litigation.

In sum, Defendants have failed to demonstrate that this is an "extraordinary case" warranting an interlocutory appeal.

## CONCLUSION

For the reasons discussed above, the Court denies Defendants' motion to certify and denies Defendants' requests for permission to file motions to reconsider.

**ORDER**

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' separate requests for permission to file a motion for reconsideration (Doc. Nos. [293, 306, 307]) are respectfully **DENIED**.

2. Defendants' Motion for Certification Under 28 U.S.C. § 1292(b) (Doc. No. [294]) is respectfully **DENIED**.

3. Defendants' Motion for Leave to File a Reply (Doc. No. [308]) is respectfully **DENIED**.

Dated: May 8, 2023            s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge