## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Corning Incorporated,

        Plaintiff,

v.

Wilson Wolf Manufacturing Corporation
and John R. Wilson,

        Defendants.

Case No. 20-cv-700 (DWF/TNL)

**ORDER**

---

Ivan Poullaos and Linda T. Coberly, Winston & Strawn LLP, 35 West Wacker Drive, Chicago, IL 60601; Robine Grant, Winston & Strawn LLP, 800 Capitol Street, Suite 2400, Houston, TX, 77002; and Kelsey McElveen, Fredrikson & Byron, 60 South Sixth Street, Suite 1500, Minneapolis, MN 55402 (for Plaintiff); and

Devan V. Padmanabhan, Paul J. Robbennolt, and Mariah L. Reynolds, Padmanabhan & Dawson PLLC, 9800 Shelard Parkway, Suite 120, Minneapolis, MN 55441 (for Defendants).

---

## I.     INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff Corning Incorporated's Motion to Strike Portions of Dr. Maury Cosman's Reply Expert Report (ECF No. 359), Plaintiff's Motion to Strike Portions of Defendants' First Rule 26(a)(2)(C) Wilson Expert Disclosure (ECF No. 363), Plaintiff's Motion to Compel Wilson Notebooks (ECF No. 367), and Plaintiff's Motion to Exclude Wilson's Untimely Produced Diligence Documents and Undisclosed Testimony (ECF No. 377).

A hearing was held before the undersigned on the motions to strike, motion to compel, and the motion to exclude on August 10, 2023.  (ECF No. 397) All four motions

are now ripe for consideration. For the reasons set forth below, the Court denies Plaintiff's motions to strike; grants in part and denies in part Plaintiff's motion to compel; and denies Plaintiff's motion to exclude.

## II.    PLAINTIFF'S MOTIONS TO STRIKE

Plaintiff filed two motions to strike: a Motion to Strike Portions of Dr. Maury Cosman's Reply Expert Report (ECF No. 359) and a Motion to Strike Portions of Defendants' First Rule 26(a)(2)(C) Wilson Expert Disclosure (ECF No. 363).

The first motion to strike focuses on Dr. Cosman's Expert Report Reply ("Dr. Cosman's Reply") in connection to Plaintiff's HYPERStack device and Defendants' United States Patent No. 9,441,192 ("'192 Patent"). The second motion to strike focuses on Defendants' First Rule 26(a)(2)(C) Wilson Expert Disclosure ("First Rule 26(a)(2)(C) Disclosure") and the opinions made in relation to Plaintiff's HYPERStack device and Defendants' United States Patent No. 9,732,317 ("'317 Patent"). In sum, Plaintiff argues that new untimely infringement theories were included in Dr. Cosman's Reply and in Defendants' First Rule 26(a)(2)(C) Disclosure and requests the Court to strike the allegedly new infringement theories. Each motion to strike is discussed below in turn.

### A. Legal Standard

Infringement contentions provide notice of infringement theories. *Dane Techs., Inc. v. Gatekeeper Sys., Inc.*, Civil No. 12-2730 ADM/JJK, 2015 WL 12819180, at *4 (D. Minn. Jan. 20, 2015). Infringement contentions do not "require disclosure of specific evidence or require a plaintiff to provide its infringement case in its infringement contentions." *Id.* Expert reports on infringement are typically served after the deadline for fact discovery

and serve a different purpose than the purpose served by infringement contentions. *Id.* at
*5. "'The scope of contentions and expert reports are not . . . coextensive.' Infringement
contentions 'need not disclose specific evidence, whereas expert reports must include a
complete statement of the expert's opinions, the basis and reasons for them, and any data
or other information considered when forming them.'" *Id.* (quotation omitted) (quoting
*Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, CV 12-01971-CW (KAW), 2014 WL
1653131, at *1 (N.D. Cal. Apr. 24, 2014)).

Expert reports in patent litigation are expected to provide more information than is
provided in infringement contentions. *Dane*, 2015 WL 12819180, at *5. *See Little Giant
Ladder Sys., LLC v. Tricam Indus., Inc.*, 2023 WL 3194803, at *10 (D. Minn. Mar. 24,
2023) ("That is the role of the expert report, which must include a complete statement of
the expert's opinions, the basis and reasons for them, and any data or other information
considered when forming them."). "[T]t is appropriate for an expert report to cite and rely
on documents produced during discovery that were not cited in the plaintiff's infringement
contentions." *Dane*, 2015 WL 12819180, at *5 (citing *L.C. Eldridge Sales Co., Ltd. V. Azen
Mfg. Pte., Ltd.*, No. 6:11cv599, 2013 WL 7937026, *7 (E.D. Tex. Oct. 11, 2013)).

An expert report, however, cannot introduce new infringement theories without
leave to amend infringement contentions subject to a showing of good cause. *Dane*, 2015
WL 12819180, at *5. *See also Little Giant*, 2023 WL 3194803, at *11 ("[A] court may
issue an order striking an expert report to the extent that it attempts to insert new invalidity
theories not disclosed in the operative invalidity contentions after the deadlines set forth
by the scheduling order."). In deciding whether to strike an expert report, the threshold

3

question is "whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Dane*, 2015 WL 12819180, at *5 (quotation omitted) (quoting *Digital*, 2014 WL 1653131, at *2). The party moving to strike a part of an expert report bears the burden of showing that a violation of the scheduling order occurred. *Little Giant*, 2023 WL 3194803, at *11.

### B.  Plaintiff's Motion to Strike Portions of Dr. Cosman's Reply

Plaintiff requests the Court strike Section IX.F of Dr. Cosman's Reply for the following reasons: it goes beyond the scope of Defendants' claim chart, is untimely, and violates the parties' stipulation. (Pl.'s Mem. in Supp. of Mot. to Strike Portions of Dr. Maury Cosman's Reply Expert Report (hereinafter "Pl.'s Mem. to Strike Dr. Cosman's Reply") at 5-10, ECF No. 360.)

#### 1.  Analysis

##### a.  New Infringement Theory

Defendants' claim chart for the '192 Patent provides that the HYPERStack vessel is not compartmentalized by a semi-permeable membrane because the gas-permeable membrane in the HYPERStack vessel is not semi-permeable. (*Id.* at 6; *see* Declaration of Ivan Poullaos Ex.1, Defs.' Infringement Claim Charts at 3, ECF No. 371-1.) The Court construed the term "semi-permeable membrane" to constitute "a membrane that allows the passage of certain molecules but prevents the passage of other molecules." (Memo. Opinion and Order at 17, ECF No. 184.) The Court concluded "that the plain and ordinary meaning of the term 'semi-permeable membrane' could encompass membranes that are gas-permeable." (*Id.*)

4

Plaintiff argues that Defendants—after not persuading the Court to construe the term "semi-permeable membrane" in the meaning Defendants argued for—offered an entirely new theory of infringement in Dr. Cosman's Reply than was provided in Defendants' claim chart for the '192 Patent. (Pl.'s Mem. to Strike Dr. Cosman's Reply at 6.) According to Plaintiff, Dr. Cosman's Reply offered a new infringement theory when Dr. Cosman offered the opinion that the gas-permeable membranes do not compartmentalize the HYPERStack device because the stackettes are always connected to one another by the manifolds. (*Id.*; *see also* Poullaos Decl. Ex. 3, Report of Dr. Maury D. Cosman in Reply ¶¶ 64, 78-79, ECF No. 371-3.) Plaintiff contends that this opinion is a new infringement theory that was not previously disclosed in Defendants' claim chart and in Defendants' response to Plaintiff's invalidity contentions. (Pl.'s Mem. to Strike Dr. Cosman's Reply at 6; *see also* Poullaos Decl. Ex. 1, Defs.' Infringement Claim Charts at 3 ("The HYPERStack does not have a semi-permeable membrane" . . . "that is not compartmentalized by a semi-permeable membrane"); Poullaos Decl. Ex. 2, Defs.' Responsive Prior Art Statement at 24, ECF No. 371-2 (explaining that "a device that does not have a semi-permeable membrane at all cannot be compartmentalized by a semi-permeable membrane").)

Defendants argue that Dr. Cosman's opinion is consistent with Defendants claim chart for the '192 Patent. (Defs.' Mem. in Resp. to Pl.'s Mot. to Strike Portions of Dr. Maury Cosman's Reply Expert Report (hereinafter "Defs.' Mem. in Resp. to Strike Dr. Cosman's Reply") at 6, ECF No. 386.) Defendants believe that Plaintiff's new infringement theory argument is based on a misunderstanding of Dr. Cosman's opinions in his reply. (*Id.*) Specifically, Plaintiff incorrectly interpreted Dr. Cosman's opinions with

respect to the "not compartmentalized" limitation to be premised on the HYPERStack's use of a manifold. (*Id.*) Defendants clarify that the reason the HYPERStack is not compartmentalized by a semi-permeable membrane does not have anything to do with the manifold. (*Id.* at 6-7.)

A close review of the record confirms that Dr. Cosman's Reply does not contain a new infringement theory. Dr. Cosman's Reply never directly states, as Plaintiff suggests, that the gas-permeable membranes do not compartmentalize the HYPERStack device because the stackettes are connected to one another at all times via the manifolds. (Pl.'s Mem. to Strike Dr. Cosman's Reply at 1-2, 6.) Plaintiff appears to have selected phrases from paragraphs 64, 79, and 78 of Dr. Cosman's Reply to create an opinion that was never asserted nor implied by Dr. Cosman. (*See also Id.* at 6 ("Through Dr. Cosman's Reply, Defendants now contend that that the gas-permeable membranes—which Dr. Cosman agrees are 'semi-permeable' and form 'the bottom of each [HYPERStack] stackette' (Ex. 3, Cosman Reply ¶¶ 64, 79)—do not 'compartmentalize' the HYPERStack device because the stackettes are 'connected to one another at all times via the manifolds' (*id.* ¶ 78).").)

Paragraph 64 of Dr. Cosman's Reply restates the Court's claim construction of semi-permeable membrane. (Poullaos Decl. Ex. 3, Report of Dr. Cosman in Reply ¶ 64.) Paragraph 78 of Dr. Cosman's Reply states that the stackettes are not separated or isolated from one another by a semi-permeable membrane. (*Id.* ¶ 78.) Rather, Dr. Cosman states that all the stackettes are connected by the manifolds of the HYPERStack. (*Id.*) Paragraph 79 of Dr. Cosman's Reply notes that Dr. Chalmers does not offer an opinion on whether the HYPERStack is compartmentalized by the semi-permeable membranes. (*Id.* ¶ 79.)

Nowhere in those three paragraphs does Dr. Cosman state that the gas-permeable membranes do not compartmentalize the HYPERStack device *because* of the manifolds.

As stated above, in deciding whether to strike an expert report, the threshold question is "whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Dane*, 2015 WL 12819180, at *5 (quotation omitted) (quoting *Digital*, 2014 WL 1653131, at *2). Dr. Cosman's Reply repeatedly states that the HYPERStack is not compartmentalized by the gas permeable shelves. (*Id.* ¶¶ 78-80.) This does not go beyond the scope of Defendants' claim contention, which provides that the "HYPERStack does not have a semi-permeable membrane." (Poullaos Decl. Ex. 1, Defs.' Infringement Claim Charts at 3.) The Court's construction of the term semi-permeable membrane does not change this. (Memo. Opinion and Order at 17, ECF No. 184 (concluding "that the plain and ordinary meaning of the term 'semi-permeable membrane' could encompass membranes that are gas-permeable").) Defendants did not impermissibly substitute a new theory of infringement.

### b. Timeliness

Plaintiff next argues that Dr. Cosman's Reply is untimely for two reasons: 1) it offers a new infringement theory that was not timely disclosed; and 2) such theory is an untimely expert opinion. (Pl.'s Mem. to Strike Dr. Cosman's Reply at 5-9.) Plaintiff states that Defendants disclosed their new theory on April 24, 2023, the date of Dr. Cosman's Reply, which is two years past the deadline for disclosing infringement theories. (*Id.* at 7.) The Court's scheduling order required Defendants to disclose infringement theories by February 1, 2021. (Tenth Amended Pretrial Scheduling Order (Patent) ¶ 5(a), ECF No.

356.) This scheduling order allowed the parties to amend their claim chart or responsive claim chart only with leave of the Court for good cause shown. (*Id.* at ¶ 5(c).) Plaintiff argues that Defendants did not seek leave to amend their claim chart to add this new theory. (Pl.'s Mem. to Strike Dr. Cosman's Reply at 7.) Plaintiff requests the Court to preclude the new theory as untimely and not to permit Defendants to amend their theory through Dr. Cosman's Reply. (*Id.*) As addressed above, Defendants did not disclose a new infringement theory in Dr. Cosman's Reply and therefore no new infringement theory was untimely disclosed.

Moving to Plaintiff's second untimeliness argument, Plaintiff also argues that Defendants' new theory is untimely because Defendants had to disclose all infringement expert opinions relating to issues on which Defendants bear the burden of persuasion by January 30, 2023, and Defendants did not do so. (*Id.* at 8.) Federal Rule of Civil Procedure 26(a)(2)(D) provides that a party must disclose expert testimony at the times and in the sequence that the court orders. The Court's scheduling order required disclosure of expert reports dealing with the issues on which each party has the burden of persuasion by January 30, 2023. (*See* Tenth Amended Pretrial Scheduling Order (Patent) ¶ 4.)

Because Dr. Cosman did not offer in his opening report any infringement opinion with respect to the HYPERStack not being compartmentalized, Plaintiff believes that Defendants are offering this new theory in the guise of responding to a tortious interference claim. (Pl.'s Mem. to Strike Dr. Cosman's Reply at 8-9.) Plaintiff's claim for tortious interference includes the allegation that Defendants did not have a good faith basis to allege infringement of the '192 Patent. (*Id.*) Plaintiff does not believe Defendants offered the new

8

theory in response to Plaintiff's tortious interference claim. (*Id.*) Rather, Plaintiff believes Defendants offered the new theory to show infringement of the '192 Patent. (*Id.*)

In response, Defendants argue that Dr. Cosman did not offer his opinions on the "not compartmentalized" limitation in support of an infringement claim because that would require disclosure by January 30, 2023. (Defs.' Mem. in Resp. to Strike Dr. Cosman's Reply at 7.) Defendants state that Dr. Cosman's opinions are offered in response to Plaintiff's expert, Dr. Jeffrey Chalmers's opinions that were asserted in support of Plaintiff's tortious interference claim. (*Id.* at 7-8; *see* Declaration of Paul J. Robbennolt Ex. G (Under Seal), Opening Expert Report of Jeffrey J. Chalmers, Ph.D. at 3-6, ECF No. 391-5.) Defendants stress that they previously conceded that Defendants cannot prove infringement of the '192 Patent because of the Court's construction of the "media height" limitations. (Defs.' Mem. in Resp. to Strike Dr. Cosman's Reply at 8; *see* Defs.' Mem. in Resp. to Pl.'s Mot. for Partial Summary Judgment of Noninfringement of the '192 ad '443 Patents at 9, ECF No. 334 (explaining that "[u]nder the Court's current construction of the 'medium height' limitations of the '192 Patents, Wilson Wolf cannot prove direct infringement by Corning's customers").)

Dr. Chalmers's opening expert report and Dr. Cosman's Reply indicate that Dr. Cosman's opinions were offered in response to opinions made by Dr. Chalmers in connection to Plaintiff's tortious interference claim. (*Compare* Robbennolt Decl. Ex. G (Under Seal), Opening Expert Report of Jeffrey J. Chalmers, Ph.D. at 3-6, ECF No. 391-5, *with* Poullaos Decl. Ex. 3, Report of Dr. Maury D. Cosman in Reply, ECF No. 371-3.) Tortious interference is one of Plaintiff's claims against Defendants and therefore Plaintiff

bears the burden of persuasion on that claim. (*See generally* Amended Complaint for Declaratory Judgment and Other Relief, ECF No. 73.) Defendants were not required to include the opinions at issue in Dr. Cosman's opening report because Defendants do not bear the burden of persuasion on Plaintiff's tortious interference claim. The record also shows that Defendants have confirmed multiple times that they do not intend to move forward on the '192 Patent because of the Court's construction of the 'medium height' limitations of the '192 Patent and are not trying to present a new theory in the guise of responding to a tortious interference claim. (*See* Declaration of Ivan Poullaos Ex. 1, Email Correspondence at 2-5, ECF No. 320-1; Defs.' Mem. in Resp. to Pl.'s Mot. for Partial Summary Judgment of Noninfringement of the '192 ad '443 Patents at 9, ECF No. 334.)

A close review of Dr. Cosman's Reply and the record shows that Dr. Cosman did not assert any new expert opinion that should have been disclosed earlier. Instead, the record shows that Dr. Cosman responded to Dr. Chalmers's opinions on Plaintiff's tortious interference claim in connection with the '192 Patent. Thus, there are no untimely expert opinions in Dr. Cosman's Reply.

### c. The Stipulation

Lastly, Plaintiff argues that Dr. Cosman's Reply violates the parties' stipulation. (Pl.'s Mem. to Strike Dr. Cosman's Reply at 9-10.) Plaintiff states that the parties stipulated that Defendants would not put forward expert reports opposing Plaintiff's claims for declaratory judgment of noninfringement for the '192 and '443 Patents. (*Id.*; *see* Stipulation at ¶ 1, ECF No. 284.) Plaintiff asserts that Dr. Cosman's Reply has an expert opinion on infringement of the '192 Patent which violates the stipulation. (Pl.'s Mem. to

Strike Dr. Cosman's Reply at 9-10.) In response, Defendants argue that Dr. Cosman's Reply does not violate the parties' stipulation because Dr. Cosman's Reply was offered in rebuttal to Dr. Chalmers's opinions which were offered in support of Plaintiff's tortious interference claim. (Defs.' Mem. in Resp. to Strike Dr. Cosman's Reply at 9.)

The stipulation on expert reports states that "Defendants will not tender expert reports opposing Corning's claims for declaratory judgment of noninfringement of U.S. Patent No. 9,441,192 (Count I) or U.S. Patent No. 8,697,443 (Count IV)." (Stipulation at ¶ 1.) Again, Defendants conceded several times that they cannot prove infringement of the '192 Patent under the Court's construction of the "media height" limitations. (*See* Poullaos Decl. Ex. 1, Email Correspondence at 2-5, ECF No. 320-1; Defs.' Mem. in Resp. to Pl.'s Mot. for Partial Summary Judgment of Noninfringement of the '192 ad '443 Patents at 9, ECF No. 334; Defs.' Mem. in Resp. to Strike Dr. Cosman's Reply at 8-9.) And, as discussed above, the record shows that Dr. Cosman's Reply responded to Dr. Chalmers's opinions on Plaintiff's tortious interference claim in connection with the '192 Patent, and Dr. Chalmers's report contains opinions on the reasonableness of Defendants' infringement contention. (*See* Robbennolt Decl. Ex. G (Under Seal), Opening Expert Report of Jeffrey J. Chalmers, Ph.D. at 3-6, ECF No. 391-5; Poullaos Decl. Ex. 3, Report of Dr. Maury D. Cosman in Reply, ECF No. 371-3.) Defendants did not violate the stipulation.

### 2. Conclusion

Plaintiff's motion to strike portions of Dr. Cosman's Reply is denied for the reasons stated above.

### C. Plaintiff's Motion to Strike Portions of Defendants' First Rule 26(a)(2)(C) Disclosure

Plaintiff's next motion to strike seeks exclusion of portions of Defendants' First Rule 26(a)(2)(C) Disclosure which summarizes the anticipated expert testimony of Defendant John R. Wilson concerning the infringement of claims 6, 7, and 9 of the '317 Patent by Plaintiff's HYPERStack device. (*See* Poullaos Decl. Ex. 7, Defs.' Rule 26(a)(2)(C) Expert Disclosure, ECF No. 371-7.) Plaintiff contends that a portion of Defendants' First Rule 26(a)(2)(C) Disclosure goes beyond Defendants' infringement claim chart. (Pl.'s Mem. in Supp. of Mot. to Strike Portions of Defendants' First Rule 26(a)(2)(C) Wilson Expert Disclosure (hereinafter "Pl.'s Mem. to Strike Wilson Expert Disclosure") at 1, ECF No. 364.)

### 1. Analysis

Plaintiff explains claim 6 of the '317 Patent includes a limitation that an infringing device must contain "projections that make contact with the outside surface of each shelf while leaving a portion of the outside surface in contact with ambient gas." (Pl.'s Mem. to Strike Wilson Expert Disclosure at 1; Poullaos Decl. Ex.1, Defs.' Infringement Claim Charts at 58, ECF No. 371-1.) Plaintiff believes the only structure Defendants identify as the claimed "projections" are "raised semi-hemispherical projections from a plate residing beneath the gas permeable material." (Pl.'s Mem. to Strike Wilson Expert Disclosure at 2; Poullaos Decl. Ex. 1, Defs.' Infringement Claim Charts at 20, 22, 37, 38, 56, 54.) Plaintiff further explains that the parties have referred to the "raised semi-hemispherical projections" as "little bumps." (Pl.'s Mem. to Strike Wilson Expert Disclosure at 3.)

Plaintiff points out that Defendants' First Rule 26(a)(2)(C) Disclosure refers to the "little bumps" as the claimed projections which Plaintiff finds is consistent with the disclosure of the "raised semi-hemispherical projections" in Defendants' claim chart. (*Id.*) Plaintiff, however, believes that Defendants' First Rule 26(a)(2)(C) Disclosure suggests that such projections could be "standoffs" or "little legs." (*Id.*) Plaintiff argues that Defendants' assertion that the "standoffs" or "little legs" are claimed "projections" is an opinion that was never disclosed in any of Defendants' infringement claims charts. (*Id.* at 4.) Plaintiff also argues that Defendants never sought leave to amend their claim charts to include this new theory and requests the Court to exclude this new theory on the grounds that it is untimely. (*Id.* at 5.)

Defendants argue that the First Rule 26(a)(2)(C) Disclosure does not change the infringement theory that Plaintiff's HYPERStack product meets the limitation in claim 6 of the '317 Patent which requires "projections that make contact with the outside surface of each shelf while leaving a portion of the outside surface in contact with ambient gas." (Defs.' Mem. in Resp. to Pl.'s Mot. to Strike Portions of Defendants' First Rule 26(a)(2)(C) Wilson Expert Disclosure (hereinafter "Defs.' Mem. in Resp. to Strike Wilson Expert Disclosure") at 2, 4, ECF No. 387.) Defendants explain that the photograph included in Defendants' claim chart shows the projections and that Defendants did not limit the claim chart exclusively to either the "standoffs" or the "little bumps" as the structures that satisfy the "projections." (*Id.* at 4, 7.) Defendants contend that Defendants' First Rule 26(a)(2)(C) Disclosure identifies the same structures that are identified in the claim chart and that the only difference in the First Rule 26(a)(2)(C) Disclosure is the level of detail regarding those

structures. (*Id.* at 10.)

The First Rule 26(a)(2)(C) Disclosure cites to the deposition testimony of Allison Tanner (one of the designers of the HYPERStack) and Gregory Martin (one of Plaintiff's design engineers), both of whom describe the structures in more detail. (*Id.*) The deposition testimony of Ms. Tanner and Mr. Martin reveals that Plaintiff refers to the structures by two different names, "standoffs" and "little bumps." (*Id.*; Poullaos Decl. Ex. 7, Defendants' Rule 26(a)(2)(C) Expert Disclosure at 22-23, ECF No. 371-7.) Defendants argue that the structures identified in the claim chart are the "little bumps" and the "standoffs" because both are structurally identical for purposes of the "projections" limitation analysis and serve the same purpose, that is holding open the air space between the stackettes. (Defs.' Mem. in Resp. to Strike Wilson Expert Disclosure at 11.) Therefore, Defendants further argue that the First Rule 26(a)(2)(C) Disclosure merely cites to deposition testimony as additional evidence which is permitted and does not constitute a new infringement theory. (*Id.* at 12.)

It is well known that the scope of claim contentions and expert reports are not the same. "Infringement contentions 'need not disclose specific evidence, whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them.'" *Dane*, 2015 WL 12819180, at *5 (quoting *Digital*, 2014 WL 1653131, at *1). Because of this, expert reports are expected to and do provide more information than infringement contentions. *Id.* *See also Little Giant*, 2023 WL 3194803, at *10 ("[T]he notice mandate does not require disclosure of specific evidence or require a party to prove its position as part of its

14

contentions . . . expert reports are inherently expected to provide more information than contained in the contentions.").

A careful review of the record shows that the First Rule 26(a)(2)(C) Disclosure cited to trial and deposition testimony all of which offered additional detail on the structures that satisfy the "projections" described in Defendants' claim chart. (*See* Robbennolt Decl. Ex. B (Under Seal), Deposition of Gregory Martin, ECF No. 391-1; Robbennolt Decl. Ex. C (Under Seal), Deposition of Corning Incorporated through Allison Tanner, ECF No. 391-2; Robbennolt Decl. Ex. D (Under Seal), Deposition of Allison Tanner, ECF No. 391-3; Robbennolt Decl. Ex. E, Trial Testimony of Gregory Martin, ECF No. 390-1.) The documents relied on in the First Rule 26(a)(2)(C) Disclosure support the infringement theory previously disclosed in Defendants' infringement contention. *See also Oracle Am., Inc. v. Google, Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011) ("That a particular document or source code file was not cited in a party's infringement disclosures does not automatically preclude the party from using that document or file to support a *theory* that was timely disclosed."). The First Rule 26(a)(2)(C) Disclosure provides additional information that was referenced in Defendants' claim chart, but a new theory was not impermissibly substituted altogether.

In *Dane*, the district court found no basis to strike portions of an expert report that discussed information the expert learned through deposition testimony. 2015 WL 12819180, at *5. Likewise, here, the First Rule 26(a)(2)(C) Disclosure cites to the deposition testimony of Ms. Tanner and Mr. Martin, both of whom describe the structures in more detail. (*See* Poullaos Decl. Ex. 7, Defs.' Rule 26(a)(2)(C) Expert Disclosure at 22-

23, ECF No. 371-7.) Both depositions also revealed the terms Plaintiff use to describe the structures at issue. And the trial testimony confirmed the terms. Thus, there is no basis to strike the portions of the First Rule 26(a)(2)(C) Disclosure that reference those depositions and trial testimony. And no new theory came from those depositions and trial testimony.

### 2.  Conclusion

Because the First Rule 26(a)(2)(C) Disclosure does not assert any new theory, Plaintiff's untimeliness argument also fails. Plaintiff's motion to strike portions of Defendants' First Rule 26(a)(2)(C) Disclosure is denied.

### III.   PLAINTIFF'S MOTION TO COMPEL

Plaintiff requests the Court to compel Defendants to produce newly discovered notebooks with a new privilege log and, in the alternative, conduct an *in camera* review of the notebooks to assess the claims of responsiveness and privilege. (Pl.'s Mem. in Supp. of its Mot. to Compel Wilson Notebooks (hereinafter "Pl.'s Mem. to Compel") at 3, ECF No. 368.)

In December 2020 Plaintiff served the first set of requests for production of documents seeking documents concerning Plaintiff's HYPERStack product. (*Id.*) At the 2013 trial in the case captioned *John R. Wilson, Wilson Wolf Manufacturing Corporation v. Corning, Inc.*, Case No. 13-cv-210 (DWF/TNL), Mr. Wilson testified extensively about his handwritten notebooks. (Pl.'s Mem. to Compel at 5; *See also* Defs.' Resp. to Corning's Mot. to Compel Wilson Notebooks (hereinafter "Defs.' Resp. to Mot. to Compel") at 9, ECF No. 388 (discussing the "daily log" Mr. Wilson maintained as part of his work at Wolison Wolf); Declaration of John R. Wilson ¶ 2, ECF No. 389.) It was not until Mr.

Wilson's testimony at the trial of the 2013 litigation that Plaintiff discovered that Defendants still had relevant notebooks that are responsive to Plaintiff's discovery requests but had not yet been produced. (Pl.'s Mem. to Compel at 4-5.)

Thus, shortly after the 2013 trial, Plaintiff began requesting Defendants to supplement their production of Mr. Wilson's notebooks for the following timeframes: June 23, 2007 through May 5, 2009 and from July 14, 2011 through January 2021. (*See* Poullaos Decl. Ex. 14, Email Correspondence, ECF No. 371-14; *see also* Pl.'s Mem. to Compel at 5.) These timeframes include the launch of Plaintiff's HYPERStack device to the present. (*Id.*; *see also* Defs.' Resp. to Mot. to Compel at 7 (clarifying the date of the launch of Plaintiff's HYPERStack device).) Defendants have refused to supplement their production of Mr. Wilson's notebooks which ultimately triggered this motion.

### A. Legal Standard

District courts have "very wide discretion in handling pretrial discovery." *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) (quotation omitted). In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* Federal Rule of Civil Procedure 37 permits a party to move for an order compelling discovery. Fed. R. Civ. P. 37(a).

Once the party seeking the discovery has made a threshold showing of relevance, the court generally looks to the party resisting discovery to show specific facts demonstrating lack of relevancy or undue burden. *Inline Packaging, LLC v. Graphic*

*Packaging Int'l, Inc.*, No. 15-cv-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016). A party objecting to a discovery request "cannot rely upon boilerplate objections, but rather they must specify how each interrogatory or request for production is deficient and articulate the particular harm that would accrue if they were required to respond to the discovery request." *Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*, No. 12-cv-2692 (JRT/LIB), 2014 WL 12610146, at *7 (D. Minn. May 23, 2014) (citing *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 512 (N.D. Iowa 2000)).

Even relevant discovery, however, "is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quotation omitted); *see* Fed. R. Civ. P. 26(b)(1).

"The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quotation omitted). "[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Id.* (quotation omitted). Considerations bearing on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Vallejo*, 903 F.3d

at 742-43.  With this in mind, the Court turns to Plaintiff's motion to compel to Mr. Wilson's notebooks.

### B. Analysis

#### 1. Relevance

Plaintiff argues that the requested notebooks are relevant and responsive to Plaintiff's First Set of Requests for the Production of Documents Number 11 ("Document Request No. 11") because the notebooks have entries "concerning Corning's HYPERStack® product." (Pl.'s Mem. to Compel at 4, 11; *see* Poullaos Decl. Ex. 9, Defs.' Resp. to Pl.'s First Set of Requests for the Production of Documents and Things (1-30) at 17, ECF No. 371-9.) Plaintiff's Document Request No. 11 seeks: "All documents and communications relating to whether Corning's HYPERStack® product or the use thereof by any entity does or does not infringe any claim of the Patents-in-Suit." (Poullaos Decl. Ex. 8, Pl. Corning Inc.'s First Set of Requests for the Production of Documents and Things (NOS. 1-30) at 16, ECF No. 371-8.)

Defendants argue that any pre-2011 notebooks are not relevant to any of Plaintiff's discovery requests related to HYPERStack, Plaintiff's customers' use of HYPERStack, or Defendants' decision to sue Plaintiff's customers for infringement based on their use of the HYPERStack device. (Defs.' Resp. to Mot. to Compel at 12.) Defendants specifically argue that notebooks that existed from the 2007 through 2009 time period would likely not be relevant because the HYPERStack device was not on the market at that time. (*Id.* at 11; *see also* Pl.'s Mem. to Compel at 5.)

"Some threshold showing of relevance must be made before parties are required to

19

open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). *See Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012) ("Relevance is construed broadly at the discovery stage. The wide scope of discovery under Federal Rule of Civil Procedure 26 allows parties to obtain 'discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .") (quoting Fed. R. Civ. P. 26(b)(1)).

The requested documents are relevant to Plaintiff's claim for declaratory judgment that the HYPERStack product and its use did not infringe Defendants' patents. Mr. Wilson maintained notebooks as part of his work. And Plaintiff requests the notebooks Mr. Wilson maintained as part of his work for the following timeframes: June 23, 2007 through May 5, 2009 and from July 14, 2011 through January 2021, and these timeframes are relevant because the timeframes include the time leading up to and through the launch of the HYPERStack device to the present.

## 2. Withholding of Responsive Notebooks

Plaintiff contends that Defendants cannot redact or withhold unresponsive information in otherwise responsive documents. (Pl.'s Mem. to Compel at 8-10.) On the other hand, Defendants assert that Rule 26 does not require Defendants to produce non-responsive material. (Defs.' Resp. to Mot. to Compel at 13-16.)

The requested notebooks are responsive to Plaintiff's Document Request No. 11, which seeks all documents relating to whether Corning's HYPERStack product or the use thereof by any entity does or does not infringe any claim of the Patents-in-Suit. (*See*

Poullaos Decl. Ex. 8, Pl. Corning Inc.'s First Set of Requests for the Production of Documents and Things (NOS. 1-30) at 16.) Regardless of Defendants view that each notebook entry should be viewed as a separate document and Plaintiff's view that each notebook is one document, the notebooks are responsive to Plaintiff's request for *all documents*. (*See also* Defs.' Resp. to Mot. to Compel at 13-14.) Defendants incorrectly argue throughout its response that Document Request No. 11 seeks communications relating to HYPERStack and therefore Mr. Wilson's notebooks are not responsive because the notebooks are not communications. (*Id.* at 7, 20-22.) This is simply not true. Document Request No. 11 seeks all documents and communications not just communications.

### 3.  Defendants' Burdensome Objection

Defendants argue that production of nonresponsive documents is burdensome. The Court finds Defendants' objection unavailing. Defendants broadly argue that reviewing hundreds of pages of handwritten notes is burdensome. (Defs.' Resp. to Mot. to Compel at 14.) Defendants, however, have previously produced three notebooks (all of which included handwritten notes and were redacted for privilege not responsiveness), covering the following time periods: March 3, 2004 to January 19, 2005; January 28, 2005 to approximately June 22, 2007; and May 6, 2009 to July 13, 2011. (Pl.'s Mem. to Compel at 5, 9.) It is unclear how production of the notebooks for the June 23, 2007 through May 5, 2009 and from July 14, 2011 through January 2021 timeframes is now overly burdensome, especially in the context of this contentious litigation. This leads to the next point. Defendants did not explain how the requested notebooks are now more burdensome than the benefits gained by obtaining the requested production. That is, the requested notebooks

could lead to relevant evidence. It should be recalled that Plaintiff learned of the notebooks in the context of Mr. Wilson's trial testimony. Plaintiff should have the opportunity to prepare for any such testimony, including for cross-examination.

The privilege logs produced in this case also cut against Defendants' burdensome argument. The privilege logs presumably show roughly seven entries that may be redacted while producing the remaining entries. (*See* Poullaos Decl. Ex. 15, Wilson Wolf's Documents Withheld Log at 2, ECF No. 371-15; Robbennolt Decl. Ex. S, Wilson's Supplemental Documents Withheld Log at 2, ECF No. 390-12.)

Defendants must produce the redacted version of the withheld notebooks for the following timeframes: June 23, 2007 through May 5, 2009 and from July 14, 2011 through January 2021.

### 4.  Original And Supplemental Privilege Logs

Defendants contend that no responsive material must be produced because the only responsive material is privileged and protected under the work product doctrine. (Defs.' Resp. to Mot. to Compel at 15-16; *see also* Poullaos Decl. Ex. 15, Wilson Wolf's Documents Withheld Log at 2; Robbennolt Decl. Ex. S, Wilson's Supplemental Documents Withheld Log at 2.) Plaintiff challenges Defendants' original privilege log, arguing that it is insufficient under Federal Rule of Civil Procedure 26 because the log fails to describe the contents being withheld to give Plaintiff enough information to assess Defendants' privilege claims. (Pl.'s Mem. to Compel at 10.)

Defendants argue that Plaintiff only made broad assertions that Defendants' privilege log does not enable Plaintiff to assess Defendants' claims. (Defs.' Resp. to Mot.

to Compel at 16-17; *see also* Robbennolt Decl. Ex. R, Email Correspondence, ECF No. 390-11.) Such broad assertions, Defendants argue, does not make clear how a privilege log would comply with Rule 26. (Defs.' Resp. to Mot. to Compel at 18.) Nonetheless, Defendants attached a supplemental privilege log to their memorandum. (*See* Robbennolt Decl. Ex. S, Wilson's Supplemental Documents Withheld Log.)

A privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). *See also Luminara Worldwide, LLC v. Liown Electronics Co. Ltd.*, Civil No. 14-3103 (SRN/FLN), 2015 WL 9861106, at *3-4 (D. Minn. Oct. 5, 2012) (finding original privilege insufficient because it failed to provide any meaningful description of the scope of each document and instead gave each document one of three descriptions: "legal advice re license," legal advice re intellectual property," or "legal advice re litigation").

Defendants' original and supplemental privilege logs are insufficient. Neither privilege log provides sufficient information that would allow Plaintiff to evaluate Defendants' claims of privilege or work product. Defendants included a supplemental privilege log with their memorandum to cure any deficiencies. The supplemental privilege log does not cure any deficiencies. The supplemental privilege log added a column named "location" and included another basis for withholding the documents (attorney client privilege), but like the original privilege log, failed to identify any named individuals that are attorneys and failed to provide a meaningful description of the scope of each document.

23

(*See* Poullaos Decl. Ex. 15, Wilson Wolf's Documents Withheld Log at 2; Robbennolt

Decl. Ex. S, Wilson's Supplemental Documents Withheld Log at 2.) Defendants must

provide a sufficient privilege log that complies with all applicable rules and law.

Defendants also ask the Court to deny Plaintiff's request for a new privilege log

because Plaintiff failed to meet and confer as required by Local Rule 7.1(a) to address any

deficiencies in Defendants' original privilege log. (Defs.' Resp. to Mot. to Compel at 16-

17.) The record reflects that Plaintiff did not fail to meet and confer as required by Local

Rule 7.1(a). (*See* Meet and Confer Statement, ECF No. 369; Poullaos Decl. Ex. 14, Email

Correspondence, ECF No. 371-14.)

### 5. Timeliness

Defendants argue that Plaintiff's motion is untimely because Plaintiff did not raise

the discovery issue until after fact discovery closed in this case, and further that Plaintiff

did not request the notebooks until after the close of discovery. (Defs.' Resp. to Mot. to

Compel at 18-23.) Plaintiff argues that its requests were timely under Federal Rule of Civil

Procedure 26(e)(1) because parties have a duty to supplement or correct all Rule 26(a)

disclosures if the party learns that the disclosure or response is incomplete or incorrect and

that such a duty to supplement exists in this matter and continues after the close of

discovery. (Pl.'s Mem. to Compel at 10-12.)

"Rule 26(e) does not give a party the *right* to supplement prior discovery answers,

it imposes on them the *duty* to do so, which duty arises whenever the information produced

is found to be incomplete or inaccurate in some material respect." *Fair Isaac Corp. v. Fed.*

*Ins. Co.*, 337 F.R.D. 413, 418 (D. Minn. 2021) (citing Fed. R. Civ. P. 26(e)(1)(A)). "The

duty to supplement continues past the discovery deadline and up to the time of trial." *Id.* at 419 (citing *Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 343, 345 (8th Cir. 1979)).

Fact discovery closed in this case on October 21, 2022. (*See* Tenth Amended Pretrial Scheduling Order (Patent) ¶ 2(b), ECF No. 356.) Plaintiff did not discover that the production was outstanding until November 2022, after the close of discovery. (*See* Robbennolt Decl. Ex. T, November 30, 2022, Trial Transcript, ECF No. 390-13.) The Court has already concluded that the requested notebooks are responsive to Plaintiff's Document Request No. 11. Trial has not started in this case. Therefore, Defendants did and does have the duty to supplement their production, and Plaintiff's request for Defendants to supplement their production was not untimely as the duty to supplement continues past the close of discovery.

Next, Defendants argue that Plaintiff's motion to compel is untimely as it was filed several months after the close of the non-dispositive motion deadline in this case and Plaintiff failed to address diligently any discovery issues relating to the requested notebooks before filing this motion. (Defs.' Resp. to Mot. to Compel at 23-26.) Plaintiff argues that the motion to compel is timely because Plaintiff worked diligently to remind Defendants of their obligation to supplement their discovery production. (Pl.'s Mem. to Compel at 10-12.)

The deadline for Plaintiff to file this motion to compel was October 21, 2022. (*See* Tenth Amended Pretrial Scheduling Order (Patent) ¶ 9(c).) Again, Plaintiff did not discover the potential discovery deficiency until after the close the discovery and after the deadline

to file a non-dispositive motion in this case. (*See* Robbennolt Decl. Ex. T, November 30, 2022, Trial Transcript.) Shortly after Plaintiff became aware of the outstanding documents, on December 30, 2022, Plaintiff asked Defendants to supplement their production. (Pl.'s Mem. to Compel at 12; Poullaos Decl. Ex. 14, Email Correspondence at 21-22, ECF No. 371-14.) The parties then engaged in informal discovery dispute resolution with Defendants ultimately agreeing to search for any responsive notebooks several months later. (*See* Poullaos Decl. Ex. 14, Email Correspondence at 14.) After searching for the requested notebooks, Defendants finally informed Plaintiff in May of 2023 that it found the requested notebooks but did not agree to produce the notebooks. (*Id.* at 4-7.) After continuing back and forth on production of the notebooks and a privilege log, Plaintiff brought this motion to compel about a month later. (*Id.* at 2-7.) The record before the Court shows that even though Plaintiff's motion was filed after the non-dispositive deadline, Plaintiff did not discover the missing production until after the deadline had past and once Plaintiff learned of the missing production, Plaintiff worked timely and diligently to secure the production before bringing this issue to the Court's attention.

### C. Conclusion

The Court thus grants Plaintiff's motion to compel. Within 21 days, Defendants shall produce a redacted version of the responsive documents (Mr. Wilson's notebooks from June 23, 2007 through May 5, 2009 and from July 14, 2011 through January 2021) to Document Request No. 11 that have not previously been produced by Defendant to Plaintiff. Within 21 days, Defendant shall also produce a third privilege log with sufficient clarity and detail in compliance with all applicable rules, law, and this Order.

In sum, Plaintiff's request for production of a redacted version of the notebooks for the June 23, 2007 through May 5, 2009 and from July 14, 2011 through January 2021 timeframes with a new privilege log is granted, and its alternative request for an *in camera* review is unnecessary and denied. Because the Court grants in part and denies in part Plaintiff's motion to compel, it shall not award attorney's fees on that motion. *See* Fed. R. Civ. P. 37(a)(5)(C).

## IV.   PLAINTIFF'S MOTION TO EXCLUDE

An issue in this case is whether Plaintiff's HYPERStack product infringes Defendants' '317 Patent (Defs.' Mem. in Resp. to Pl.'s Mot. to Exclude Diligence Summary and Related Testimony of John Wilson (hereinafter "Defs.' Mem. to Mot. to Exclude") at 3, ECF No. 385.) Invalidity of the '317 Patent concerns whether Defendants can prove that Mr. Wilson conceived of the invention claimed in the '317 Patent before Plaintiff's application and that he exercised reasonable diligence in reducing that claimed invention to practice. (*See* Pl.'s Mem. in Supp. of its Mot. to Exclude Wilson's Untimely Produced Diligence Documents and Undisclosed Testimony (hereinafter "Pl.'s Mem. to Exclude") at 4, ECF No. 378.) Defendants' opening Rule 26(a)(2)(C) Expert Disclosure offers opinions that Plaintiff's HYPERStack product infringes Defendants''317 Patent. (*Id.*) Defendants' Second Rule 26(a)(2)(C) Expert Disclosure offers rebuttal opinions concerning the validity of the '317 Patent. (*Id.*)

Plaintiff brought this last motion to argue that Defendants did not disclose any diligence in reducing the invention in the '317 Patent to practice as one of the subject matters in Mr. Wilson's Rule 26(a)(2)(C) expert disclosures. (*Id.* at 5.) This motion

concerns spreadsheets which Plaintiff believes is a new diligence theory that was not timely produced, and any opinions or testimony based on the spreadsheets should be excluded as untimely under the Federal Rules of Civil Procedure and the Court's scheduling order. (*Id.* at 7.)

### A. Legal Standard

Federal Rule of Civil Procedure 26(a)(2)(B)(i) require experts to provide a written report disclosing "a complete statement of all opinions the witness will express and the basis and reasons for them." *See also* Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 1993 amendment ("Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed.").

The purpose of Rule 26(a)(2) is to eliminate "unfair surprise to the opposing party." *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995). *See Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1059-60 (D. Minn. 2012) ("The requirement to provide a report containing all bases for an expert's opinion is intended to permit opposing counsel to effectively prepare to depose the expert in advance of trial."). "If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

### B. Analysis

#### 1. Undisclosed Opinions

Plaintiff argues that right before and after Mr. Wilson's deposition, Defendants

produced, in violation of Rule 26(a)(2), diligence spreadsheets covering the February 18, 2004 to July 25, 2005 timeframe. (Pl.'s Mem. to Exclude at 5-10; *see also* Declaration of Ivan Poullaos Ex. 3, Diligence Document, ECF No. 379-2; Poullaos Decl. Ex. 6, Defs.' Document Production, bates range WWDJ0048257-WWDJ0048266, ECF No. 379-5.) Per the Court's scheduling order, expert reports were due on January 30, 2023, rebuttal expert reports were due on March 20, 2023, and reply expert reports were due on April 24, 2023. (Tenth Amended Pretrial Scheduling Order (Patent) ¶ 4.) Plaintiff contends that the opinions in the spreadsheets were not disclosed in Defendants' Rule 26(a)(2)(C) expert disclosures and thus any future testimony by Mr. Wilson's on those opinions are untimely and should be excluded under Rule 37(c)(1). (Pl.'s Mem. to Exclude at 5, 8-10.) Plaintiff also argues that the documents referenced in the spreadsheets did not exist during fact discovery. (*Id.* at 11.)

In response, Defendants claim that they intend to use the spreadsheets as a Rule 1006 summary or as demonstratives to elicit fact testimony from Mr. Wilson regarding his personal knowledge of specific events. (Defs.' Mem. to Mot. to Exclude at 2-3.) Defendants confirm that Mr. Wilson will not testify in this case that the work he performed and work that was performed at his direction satisfied the diligence legal standard. (*Id.* at 5; *see* Robbennolt Decl. Ex. I, Defs.' Second Rule 26(a)(2)(C) Expert Disclosure, ECF No. 390-2.) Defendants explain that the spreadsheets at issue summarize documents that Defendants previously produced to Plaintiff during fact discovery. (Defs.' Mem. to Mot. to Exclude at 7-8.)

Before the Court can decide whether the spreadsheets violate Rule 26 and call for

exclusion under Rule 37, the Court must first consider whether the spreadsheets were "untimely disclosed expert materials or if they were merely summaries of voluminous data that were admissible under Federal Rule of Evidence 1006." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 771 (8th Cir. 2020)

The spreadsheets produced on June 30, 2023, display Bates numbers of documents that Defendants previously produced. (*See* Poullaos Decl. Ex. 6, Defs.' Document Production, bates range WWDJ0048257-WWDJ0048266; Poullaos Decl. Ex. 4, Rough Transcript for the Deposition of John Wilson at 15-17, ECF No. 379-3.) For the roughly eight entries that do not reference Bates numbers, Defendants explain that the entries have a naming convention that Plaintiff will be able to use to find the document in the production or are undisputed facts. (Defs.' Mem. to Mot. to Exclude at n.3.) Plaintiff does not cite to any support for Plaintiff's argument that the documents referenced in the summary were not previously produced documents.

Plaintiff's argument that the spreadsheets require expert testimony to explain how and why the various entries allegedly show diligence in reduction to practice only serves to strengthen Defendants argument that they do not intend to use the spreadsheets for expert testimony but rather intend to use the spreadsheets as a Federal Rule of Evidence 1006 summary or to elicit factual testimony from Mr. Wilson (demonstrative evidence). (*See also* Pl.'s Mem. to Exclude at 11; Defs.' Mem. to Mot. to Exclude at 2-3.) And Defendants' response confirms that Defendants' will not provide expert opinion testimony on diligence at trial. (Defs.' Mem. to Mot. to Exclude at 10.)

Plaintiff is essentially requesting the Court to exclude spreadsheets summarizing

documents already produced and testimony on the spreadsheets when such testimony or request to use the spreadsheets as a Rule 1006 summary or demonstrative evidence has not occurred. Rule 1006 or demonstrative evidence is not required to be disclosed during fact or expert discovery because issues concerning Rule 1006 and demonstrative evidence are handled at trial. And the spreadsheets are not undisclosed expert opinion on any new diligence theory. Therefore, the summary did not violate Rule 26 making sanctions under Rule 37 unwarranted.

### 2. Rule 1006 or Demonstrative Evidence

In the alternative, Plaintiff contends that Defendants cannot excuse the untimely disclosure by claiming the documents relate to Mr. Wilson's fact testimony. (Pl.'s Mem. to Exclude at 10; *see also* Poullaos Decl. Ex. 7, Email Correspondence at 2, ECF No. 379-6 (changing references to "undisclosed opinions" to "related testimony" because Defendants "do not agree that Mr. Wilson's testimony about the work that was done by him and at his direction constitutes expert 'opinions' or expert testimony").) Plaintiff believes the spreadsheets were created to support Mr. Wilson's expert opinion on diligence in reducing the invention in the '317 Patent to practice. (Pl.'s Mem. to Exclude at 11.) Plaintiff argues that the spreadsheets are not summary charts under Rule 1006 because they do not summarize voluminous evidence, will not assist the jury, and are vague references and notations that require expert testimony to explain. (*Id.* at 11-12.)

Defendants argue that Mr. Wilson's testimony about his diligence between February 18, 2004 and July 25, 2005 constitutes factual testimony and not expert testimony and thus such testimony should not be excluded as undisclosed expert testimony. (Defs.' Mem. to

Mot. to Exclude at 8-9, 12.) Defendants confirm that Mr. Wilson will not provide expert opinion testimony on diligence in reduction to practice as a legal matter at trial but will present factual testimony based on his personal knowledge of his work that he completed in 2004 and 2005 and the spreadsheets that describe that work. (*Id.* at 9-11.) Defendants explain that Mr. Wilson has personal knowledge of each of the documents included in the spreadsheets and that he prepared the spreadsheets based on his personal knowledge. (*Id.* at 11.) Defendants also confirm that Mr. Wilson will not rely on the spreadsheets for any of his expert opinions because Defendants intend to offer at trial the spreadsheets under Rule 1006 for the purpose of helping the jury to understand the voluminous documents. (*Id.* at 12.) Rule 1006 summaries, Defendants argue, are offered at trial, and are not required to be disclosed during discovery. (*Id.* at 13.)

Federal Rule of Evidence 1006 allows a proponent to "use a summary . . . to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." "Rule 1006 is an evidentiary rule, not one of discovery, and provides only that the underlying documents, not the summaries themselves, must be produced to the opposing party." *United States v. Cameron-Ehlen Group, Inc.*, Case No. 13-cv-3003 (WMW/DTS), 2023 WL 36174, at *18 (D. Minn. Jan. 4, 2023) (quotation omitted) (quoting *United States v. Streb*, 477 F. Supp. 3d 835, 854 (S.D. Iowa 2020)).

"Summary evidence is properly admitted when (1) the charts fairly summarize voluminous trial evidence; (2) they assist the jury in understanding the testimony already introduced; and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary." *Vogt*, 963 F.3d at 771 (quotation

omitted) (quoting *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005)). "Charts or summaries may include assumptions and conclusions, but said assumptions and conclusions must be based upon evidence in the record." *United States v. Wainright*, 351 F.3d 816, 821 (8th Cir. 2003).

Rule 1006 is an issue for trial. Thus, the Court defers to the trial Judge's discretion in handling any Rule 1006 and demonstrative issues at trial. *See Cameron-Ehlen Group, Inc.*, 2023 WL 36174, at *18 ("Questions pertaining to the uniformity of the summaries are properly addressed when . . . [a party] lay[s] the foundation for the admission of the spreadsheets . . . [a party] may attempt to lay the appropriate foundation at trial to support admission of the Rule 1006 spreadsheets.").

### C. Conclusion

For the reasons stated above, Plaintiff's motion to exclude the spreadsheets and Mr. Wilson's testimony in connection to those spreadsheets is denied.

## V.    ORDER

Therefore, based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Strike Portions of Dr. Maury Cosman's Reply Expert Report (ECF No. 359) is **DENIED**.

2. Plaintiff's Motion to Strike Portions of Defendants' First Rule 26(a)(2)(C) Wilson Expert Disclosure (ECF No. 363) is **DENIED.**

3. Plaintiff's Motion to Compel Wilson Notebooks (ECF No. 367) is **GRANTED IN PART** and **DENIED IN PART.**

4. Plaintiff's Motion to Exclude Wilson's Untimely Produced Diligence Documents and Undisclosed Testimony (ECF No. 377) is **DENIED.**

5. All prior consistent orders remain in full force and effect.

6. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: November 30, 2023

*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Corning Inc. v. Wilson Wolf*
*Manufacturing Corp. and John R.*
*Wilson*
Case No. 20-cv-700 (DWF/TNL)

34